**LEIF M. JOHNSON**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 1478**
**Billings, MT 59103**
**2929 Third Ave. North, Suite 400**
**Billings, MT 59101**
**Phone: (406) 247-4630**
**Fax: (406) 657-6989**
**Email: Ljohnson4@usdoj.gov**

**JOHN C. CRUDEN**
**Acting Assistant Attorney General**
**Environment and Natural Resources Division**
**DANIEL PINKSTON**
**Environmental Defense Section**
**Environment and Natural Resources Division**
**U.S. Department of Justice**
**1961 Stout Street, 8th Floor**
**Denver, CO 80294**
**Phone: (303) 844-1804**
**Fax: (303) 844-1350**
**Email: daniel.pinkston@usdoj.gov**

**ATTORNEYS FOR PLAINTIFF**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MONTANA**

**MISSOULA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CV 09-130-M-DWM-JCL |
| | ) | |
| vs. | ) | COMPLAINT |
| | ) | |
| | ) | |
| BAR-1 RANCH, LTD; | ) | |
| BAR-1 RANCH, LLC; | ) | |
| BAR-1 RANCH 2, LLC; | ) | |
| BAR-ONE RANCH | ) | |
| MANAGEMENT, LLC; | ) | |
| and ALFRED BARONE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The United States of America, through its undersigned attorneys, by the authority of the Attorney General, and at the request of the Administrator of the United States Environmental Protection Agency, alleges as follows:

<u>NATURE OF THE ACTION</u>

1. This is a civil action commenced under section 309(b) and (d) of the Clean Water Act ("CWA" or the "Act"), 33 U.S.C. § 1319(b) and (d), to obtain injunctive relief and civil penalties against Bar-1 Ranch, LTD, Bar-1 Ranch, LLC, Bar-1 Ranch 2, LLC, Bar-One Ranch Management, LLC, and Alfred Barone ("Defendants"), for the discharge of pollutants into waters of the United States in

Missoula County, Montana, without authorization by the United States Department of Army, in violation of CWA section 301(a), 33 U.S.C. § 1311(a).

2.  This is also a civil action commenced under section 309(b) and (d) of the Act, 33 U.S.C. § 1319(b) and (d), to obtain civil penalties against certain of the Defendants for the discharge of pollutants to waters of the United States from construction activities without authorization by the State of Montana, for the violation of the Montana General Permit for Storm Water Discharges Associated with Construction Activity ("Montana General Permit"), and for violation of an order issued by the United States Environmental Protection Agency ("EPA").

3.  In this action, the United States seeks (a) to enjoin the discharge of pollutants into waters of the United States without a permit in violation of section 301(a) of the Act, 33 U.S.C. § 1311(a); (b) to enjoin Defendants to complete all requirements of the "Bar One Ranch: Waters of the U.S. Restoration Plan"; and (c) to require Defendants to pay civil penalties as required in 33 U.S.C. § 1319(d).

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over the subject matter of this action pursuant to section 309(b) of the Act, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331, 1345, and 1355.

5.  Venue is proper in the District of Montana pursuant to section 309(b) of

the Act, 33 U.S.C. § 1319(b), and 28 U.S.C. § 1391(b) and (c), because

Defendants conduct business in this District, the subject property is located in this

District, and the cause of action alleged herein arose in this District.

6. Notice of the commencement of this action has been provided to the

State of Montana pursuant to section 309(b) of the Act, 33 U.S.C. § 1319(b).

<u>THE PARTIES</u>

7. The Plaintiff in this action is the United States of America.  Authority to

bring this action is vested in the United States Department of Justice pursuant to

28 U.S.C. §§ 516 and 519, and 33 U.S.C. § 1366.

8. Defendant Bar-1 Ranch, LTD, is a Montana corporation whose address is

34500 Cedar Creek Road, Huson, Montana 59846-9500.

9. Defendant Bar-1 Ranch, LLC, is a Montana limited liability company

whose address is 34500 Cedar Creek Road, Huson, Montana 59846-9500.

10. Defendant Bar-1 Ranch 2, LLC, is a Montana limited liability company

whose address is 34500 Cedar Creek Road, Huson, Montana 59846-9500.

11. Defendant Bar-One Ranch Management, LLC, is a Montana limited

liability corporation whose address is 34500 Cedar Creek Road, Huson, Montana

59846-9500.

12. Defendant Alfred Barone ("Barone") is an individual who, on

- 4 -

information and belief, resides in the State of New York.

13.  At all times relevant to the Complaint, the Defendants either owned, leased, or otherwise controlled the real property that is the subject of this Complaint and/or otherwise controlled or engaged in activities that occurred on the property.

<u>STATUTORY AND REGULATORY BACKGROUND</u>

14.  The objective of the Clean Water Act is to restore and maintain the chemical, physical and biological integrity of the nation's waters.  33 U.S.C. § 1251(a).

15.  Under section 301(a) of the Act, 33 U.S.C. § 1311(a), the discharge of a pollutant by any person is unlawful, except as in compliance with certain sections of the Act, including sections 402 and 404 of the Act, 33 U.S.C. §§ 1342 and 1344.

16.  Section 404(a) of the Act, 33 U.S.C. § 1344(a), authorizes the Secretary of the Army, acting through the Chief of Engineers, to issue permits for the discharge of dredged or fill material into navigable waters at specified disposal sites, after notice and opportunity for public comment.

17.  Section 402 of the Act, 33 U.S.C. § 1342, establishes a National Pollutant Discharge Elimination System ("NPDES") permit program to control

discharges of pollutants.  In accordance with this section, an NPDES permit is

required to be obtained from the EPA, or a state authorized to administer the

NPDES program, prior to the discharge of a pollutant.

18.  Section 502(12) of the Act, 33 U.S.C. § 1362(12), defines "discharge of

a pollutant" to include "any addition of any pollutant to navigable waters from any

point source."

19.  Section 502(6) of the Act, 33 U.S.C. § 1362(6), defines "pollutant" to

include, *inter alia*, dredged spoil, rock, and sand.

20.  Section 502(7) of the Act, 33 U.S.C. § 1362(7), defines "navigable

waters" as "the waters of the United States, including the territorial seas."

21.  33 C.F.R. § 328.3(a) and 40 C.F.R. § 232.2, define "waters of the

United States" to include:  (i) waters which are currently used, were used in the

past, or may be susceptible to use in interstate or foreign commerce; (ii) interstate

waters; (iii) tributaries to such waters; and (iv) wetlands adjacent to such waters or

their tributaries.

22.  33 C.F.R. § 328.3(b) and 40 C.F.R. §§ 122.2 and 232.2 define

"wetlands" as "those areas that are inundated or saturated by surface or ground

water at a frequency and duration sufficient to support, and that under normal

circumstances do support, a prevalence of vegetation typically adapted for life in

saturated soil conditions."

23.  Section 502(14) of the Act, 33 U.S.C. § 1362(14), defines "point source" to include "any discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged."

24.  Section 502(5) of the Act, 33 U.S.C. § 1362(5), defines "person" to include "an individual, corporation, partnership [or] association."

25.  Pursuant to section 402 of the Act, 33 U.S.C. § 1342, EPA promulgated regulations setting forth the permit application requirements for storm water discharges.  55 Fed. Reg. 48,063 (Nov. 16, 1990).  These regulations are codified at 40 C.F.R. § 122.26.

26.  Section 402 of the Act, 33 U.S.C. § 1342, provides that discharges of storm water "associated with industrial activity" require a permit under the National Pollutant Discharge Elimination Program ("NPDES").  *See also* 40 C.F.R. § 12.26(a).  Pursuant to the storm water regulations, dischargers of storm water "associated with industrial activity" and with "small construction activity" are required to obtain an individual NPDES permit or coverage under a storm water general permit.  "Industrial activity" includes "clearing, grading and excavation except operations that result in the disturbance of less than five acres, and includes the disturbance of less than five acres "that is a part of a larger

common plan of development or sale if the larger common plan will ultimately

disturb five acres or more." 40 C.F.R. § 122.26(b)(14)(x).  Storm water discharges

associated with "small construction activity" include construction activities of one

to five acres in area, or less than one acre of disturbance that is part of a larger

common plan of development or sale." 40 C.F.R. § 122.26(b)(15).

27.  40 C.F.R. § 122.26(b)(13) defines "storm water" as "storm water

runoff, snow melt runoff, and surface runoff and drainage."

28.  Pursuant to the Act, states may issue their own storm water permits if

they are authorized by EPA to do so.  The State of Montana is an authorized State,

and, in 2002, issued its own general permit governing discharges of storm water

associated with construction activities.  *See*, Montana Department of

Environmental Quality ("MDEQ"), "General Permit for Storm Water Discharge

Associated with Construction Activity," effective as of June 8, 2002, Permit

Number MTR100000, and as reissued April 16, 2007.

29.  The Montana General Permit authorizes certain discharges of storm

water associated with construction activity within the State of Montana that will

result in the disturbance of one or more acres of total land area.

30.  Any person subject to the Montana General Permit is required to

develop, prior to commencing construction, a storm water pollution prevention

plan ("SWPPP"), which sets forth a plan for reducing and preventing discharges of storm water associated with construction activities. Central to the SWPPP are best management practices, which are designed to prevent or reduce the discharges of pollutants from the site. These practices include measures to prevent erosion and measures to capture sediment before it leaves the site.

31. The Montana General Permit requires the permittee to implement the SWPPP and to implement and maintain best management practices to prevent or reduce, to the best extent practicable, discharges of pollutants from storm water. The permit also imposes additional requirements, including those for inspection of the site, maintenance of the SWPPP, and final stabilization of the site followed by termination of permit coverage.

32. Section 308(a) of the Act, 33 U.S.C. § 1318(a), provides that whenever required to carry out the objectives of the Clean Water Act, including carrying out sections 402 and 404 of the Act, 33 U.S.C. §§ 1342 and 1344, the EPA Administrator may require the owner or operator of any point source to establish and maintain records, make reports, use monitoring methods, sample effluents, and "provide such information as he may require." EPA regulations require dischargers seeking coverage under a general permit to submit a written notice of intent to be covered. A discharger who fails to submit a notice of intent may not

discharge storm water.  40 C.F.R. § 122.28(a)(2).

33.  The Montana General Permit requires that dischargers submit a notice of intent before coverage under the General Permit is effective.

34.  Section 309(b) of the Act, 33 U.S.C. § 1319(b), authorizes the Administrator of EPA to commence a civil action for appropriate relief, including a permanent or temporary injunction, against any person who violates, *inter alia*, section 301 of the Act, 33 U.S.C. § 1311, or any condition or limitation of a permit issued by the Administrator or by a state pursuant to section 402 of the Act, 33 U.S.C. § 1342.

35.  Section 309(d) of the Act, 33 U.S.C. § 1319(d), authorizes the commencement of an action for civil penalties against any person who violates, *inter alia*, section 301 of the Act, 33 U.S.C. § 1311, any requirement of section 308 of the act, 33 U.S.C. § 1318, any condition or limitation of a permit issued by the Administrator or by a state pursuant to Section 402 of the Act, 33 U.S.C. § 1342, or any order issued by the Administrator of EPA under section 309(a) of the Act, 33 U.S.C. § 1319(a).

<u>GENERAL ALLEGATIONS</u>

36.  Commencing in approximately October 2003, at specific times best known by the Defendants, Defendants and/or persons acting on their behalf,

discharged dredged or fill material, including dirt, dredged spoil, rock, and sand,

into creeks, ponds, drainages and wetlands in connection with the construction of

16 ponds and associated structures on the Bar One Ranch Site near Huson,

Montana (the "Site").

37.  The dirt, spoil, rock, and sand referenced in Paragraph 36 constitute

"pollutants" as defined in section 502(6) of the Act, 33 U.S.C. § 1362(6).

38.  Waters of the United States on the Site include wetlands adjacent to

Ninemile Creek, which is a water of the United States.  Wetlands on the Site have

a continuous surface connection with Ninemile Creek.  Wetlands on the Site are

also adjacent to an unnamed creek, Cedar Creek, and Free Creek, all of which are

non-navigable tributaries of Ninemile Creek which flow at least seasonally.

Wetlands on the Site have continuous surface connections to some or all of these

non-navigable tributaries as well.

39.  Ninemile Creek is a perennial flowing water which is navigable-in-fact

and traditionally navigable.  Ninemile Creek flows into the Clark Fork River, an

interstate navigable-in-fact and traditionally navigable water.

40.  In addition, the wetlands on the Site, either alone or in combination

with similarly situated waters in the region, have a significant nexus to and/or

significantly affect the chemical, physical or biological integrity of downstream

traditional navigable waters, including Ninemile Creek and the Clark Fork River.

41.  The waters, ponds, drainages and wetlands at the Site into which Defendants and/or persons acting on their behalf discharged pollutants, including dredged and/or fill material, are "navigable waters" as defined in section 502(7) of the Act, 33 U.S.C. § 1362(7), and "waters of the United States" as defined in 33 C.F.R. § 328.3(a), and 40 C.F.R. § 232.2.

42.  Defendants and/or persons acting on their behalf used mechanized land-clearing and earth-moving equipment to accomplish the discharges referenced in Paragraph 36.  This equipment constitutes "point sources" as defined in section 502(14) of the Act, 33 U.S.C.
§ 1362(14).

43.  Defendants either owned, leased or otherwise controlled the land on which each unauthorized discharge of dredged and/or fill material into waters of the United States described in Paragraph 36 occurred.

44.  Defendants conducted, contracted for, supervised and/or otherwise controlled the unauthorized discharges described in Paragraph 36.

45.  Defendants are persons within the meaning of section 502(5) of the Act, 33 U.S.C. § 1362(5).

46.  With respect to the discharges of dredged and/or fill material into

waters of the United States described in Paragraph 36, Defendants did not obtain a

permit from the Secretary of the Army, acting through the Chief of Engineers, as

required by sections 301(a) and 404 of the Act, 33 U.S.C. §§ 1311(a), 1344.

47.  On or about November 3, 2004, a representative of the Missoula

Conservation District ("MCD") visited the Site, and estimated that approximately

ten acres had been disturbed and that approximately 500-600 feet along Ninemile

Creek had been disturbed and cleared of vegetation.

48.  On or about January 19, 2005, after receiving a complaint, the Helena

Regulatory Office of the United States Army Corps of Engineers wrote to Barone

and Bar-1 Ranch, LTD, indicating that the Corps had information regarding work

at the Site, and that the project

might require a CWA section 404 permit.  The Corps sought additional

information about the project and recommended that no further work be performed

at the Site until the Corps made a Site visit and evaluated the situation.  Neither

Barone nor Bar-1 Ranch, LTD, responded to the letter.

49.  On or about August 18, 2005, the Montana Department of Natural

Resources and Conservation ("DNRC") inspected the Site to investigate State

water rights issues associated with the construction of ponds.  On or about August

25, 2005, DNRC wrote to Barone, enclosing a copy of its field inspection report,

and informing Barone that the pond construction violated the Montana Water Use

Act.

50.  On or about October 12, 2005, in response to a complaint about flooding, MCD visited the Site and observed Barone removing vegetation along Cedar Creek with heavy equipment.

51.  On or about November 9, 2005, the Corps inspected the Site, noting that gravel had been dumped into Cedar Creek; that Cedar Creek had been reconfigured and directed into the pond system; that five berms had been placed across the Cedar Creek channel flowing into Ninemile Creek; and that fill material had been pushed into the unnamed creek and into wetlands.

52.  On November 16, 2005, the Corps issued a "Cease and Desist Order for Violation of the Clean Water Act," File No. 2004-90-782, to Barone and Bar-1 Ranch, LTD, ordering them to "cease and desist any further unauthorized work or development at the site involving wetlands or waters of the United States." As interim measures, the Order required the respondents to remove the berms across Cedar Creek and to remove fill located near the unnamed creek. It also recommended that respondents contact MDEQ regarding storm water permitting.

53.  On or about November 18, 2005, DNRC informed Barone that the ponds at the Site were constructed without a valid water right in violation of the Montana Water Use Act, and instructed him to immediately cease pond construction activities.

54.  On or about November 21, 2005, MCD conducted an inspection of the Site.  On or about November 22, 2005, MCD informed Barone that the pond construction activities were performed without an appropriate permit pursuant to the Montana Natural Streambed and Land Preservation Act, and ordered him to halt construction.

55.  Barone continued construction on the Site through at least November 27, 2005.

56.  On or about December 9, 2005, MDEQ wrote to Barone, informing him that the activities at the Site violated the Montana Water Quality Act.  Barone was ordered to cease all activities causing the discharge of pollutants into State waters, including Ninemile Creek and Cedar Creek, and was directed to contact MDEQ to regarding a stormwater permit.

57.  After the Corps referred the matter to EPA for enforcement in December 2005, EPA issued "Findings of Violation and Administrative Order for Compliance" ("Compliance Order"),  Docket No. CWA-08-2006-0015, dated January 26, 2006, directed to Barone.  The Compliance Order found that Barone had discharged dredged and fill material to waters of the United States without a section 404 permit.  The Compliance Order required Barone to cease further unauthorized discharges, to submit a restoration plan for initial corrective measures and removal of the discharged dredged and fill material, and for

- 15 -

restoration of impacted areas.  All restoration work was required to be completed by August 1, 2006.

58.  On or about March 17, 2006, Barone and his restoration contractors PBS&J and Rich Thumma of Streamworks, Inc., submitted a Notice of Intent form to MDEQ to obtain coverage for restoration work under the Montana General Permit.  On or about March 22, 2006, MDEQ sent a confirming letter to Barone, PBS&J and Thumma, indicating that permit coverage under the Montana General Permit had been granted.

59.  Barone violated the terms of the Montana General Permit by submitting an inadequate Storm Water Pollution Prevention Plan, failing to implement and/or maintain adequate best management practices, and not performing required inspections and submitting required reports.

60.  In the Spring of 2006, Barone and his contractors performed certain interim corrective action activities to address the unauthorized discharge of dredged and fill material at the Site.

61.  On September 15, 2006, EPA issued a "Notice of Violation of Findings of Violation and Administrative Order for Compliance, Docket No. CWA-08-2006-15," directed to Barone.  EPA stated that the Compliance Order required that all restoration activity be completed by August 1, 2006, but that as of August 28, 2006, the date of a Site visit by EPA, the restoration work had not begun.

62.  Barone's contractors conducted restoration work from approximately September 25, 2006, through October 27, 2006, and from July 10, 2007, through August 21, 2007, when the restoration activities were completed.  The restoration plan approved by EPA requires five years of monitoring and reporting following completion of the restoration activities.

63.  Notice of commencement of this action has been given to the State of Montana in accordance with section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b).

FIRST CLAIM FOR RELIEF
(Discharge Into Waters of the United States without a Section 404 Permit –
All Defendants)

64.  Paragraphs 1 through 63 are realleged and incorporated herein by reference.

65.  Defendants have violated and/or continue to violate section 301(a) of the Act, 33 U.S.C. § 1311(a), by discharging, without authorization, pollutants, including dredged and/or fill material, into waters of the United States at the Site.

66.  Defendants' discharges of dredged and/or fill material at the Site resulted in the filling of or adverse impacts to creeks, ponds, drainages, wetlands and/or other waters of the United States.

67.  Each day that such material remains in place constitutes a separate

violation of  section 301(a) of the Act, 33 U.S.C. § 1311(a).

68.  Pursuant to section 309 of the Act, 33 U.S.C. § 1319, and 40 C.F.R. Part 19, Defendants are liable for injunctive relief and civil penalties of up to $27,500 per day per violation for violations committed on or before March 15, 2004, and $32,500 per day per violation for violations occurring thereafter.

## SECOND CLAIM FOR RELIEF
(Discharge in Waters of the United States without a Storm Water Permit – All Defendants)

69.  Paragraphs 1 through 68 are realleged and incorporated herein by reference.

70.  At specific times best known to the Defendants and continuing until at least March 22, 2006, the Defendants violated section 301(a) of the Act, 33 U.S.C. § 1311(a), by discharging, without authorization, pollutants into waters of the United States, including adjacent wetlands, at the Site.

71. Pursuant to section 309 of the Act, 33 U.S.C. § 1319, and 40 C.F.R. Part 19, the Defendants are liable for injunctive relief and civil penalties of up to $27,500 per day per violation for violations committed on or before March 15, 2004, and $32,500 per day per violation for violations occurring thereafter.

## THIRD CLAIM FOR RELIEF
(Failure to Comply with a Storm Water Permit – Barone)

72.  Paragraphs 1 through 73 are realleged and incorporated herein by reference.

73.  Commencing on or about March 22, 2006, Barone violated the terms of the Montana General Permit by failing to develop a timely or adequate SWPPP, by failing to properly implement a SWPPP, by failing to implement and/or maintain best management practices, and by failing to perform and/or document all required inspections at the Site.

74.  Pursuant to section 309 of the Act, 33 U.S.C. § 1319, and 40 C.F.R. Part 19,  Barone is liable for injunctive relief and civil penalties of up to $27,500 per day per violation for violations committed on or before March 15, 2004, and $32,500 per day per violation for violations occurring thereafter.

FOURTH CLAIM FOR RELIEF
(Violations of Administrative Order – Barone)

75.  Paragraphs 1 through 74 are realleged and incorporated herein by reference.

76.  On January 26, 2006,  EPA issued its Compliance Order to Barone.

77.  The Compliance Order specified certain actions that Barone was required to complete in order to come into compliance with the Clean Water Act.

78.  Defendant Barone did not comply with certain requirements of the Compliance Order in a timely manner.

79.  Pursuant to section 309 of the Act, 33 U.S.C. § 1319, and 40 C.F.R. Part 19, Defendant Barone is liable for civil penalties of up to $32,500 per day per

violation for each for each violation of the Compliance Order.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States of America respectfully requests that this Court order the following relief:

A.  That the Defendants be permanently enjoined from discharging or causing the discharge of dredged or fill material or other pollutants into any waters of the United States except in compliance with the Clean Water Act, including all permits issued thereunder;

B.  That the Defendants be enjoined to undertake measures, at their own expense and at the direction of the United States Environmental Protection Agency, to effect complete restoration and monitoring of adversely impacted waters of the United States at the Site;

C.  That Defendants be assessed pursuant to section 309(d) of the Act, 33 U.S.C. § 1319(d), a civil penalty for each day of each violation of section 301(a) of the Act, 33 U.S.C. § 1311(a);

D.  That Barone be assessed pursuant to section 309(d) of the Act, 33 U.S.C. § 1319(d), a civil penalty for each day of each violation of the Montana General Permit;

E.  That Defendant Barone be assessed pursuant to section 309(d) of the Act, 33 U.S.C. § 1319(d), a civil penalty for each day of violation of the

Compliance Order issued under section 309 (a) of the Act, 33 U.S.C. § 1319(a);

F.  That the United States be awarded costs and disbursements in this

action; and

G.  Such other and further relief as the Court deems just and appropriate.

DATED this 31st day of August, 2009.

> JOHN C. CRUDEN
> Acting Assistant Attorney General
> Environment and Natural Resources  Division
>
> DANIEL PINKSTON
> Environmental Defense Section
> Environment and Natural Resources Division
> United States Department of Justice
>
>
> WILLIAM W. MERCER
> United States Attorney
>
> /s/ Leif M. Johnson
> LEIF M. JOHNSON
> Assistant U.S. Attorney
>
> ATTORNEYS FOR PLAINTIFF
> United States of America